UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE T. POOLE,<br><br>   Petitioner,<br><br> v.<br><br>PAT HORN,<br><br>   Respondent. | Case No. 20-cv-02283-HSG<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Petitioner Andre T. Poole filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction and sentence in Alameda County Superior Court. Dkt. No. 1 ("Pet."). Petitioner is currently serving an aggregate state sentence of seven years and two months followed by life imprisonment without the possibility of parole for first degree murder; attempted voluntary manslaughter; and possession of a firearm by a felon. Respondent has filed an answer, Dkt. No. 16 ("Answer"), and Petitioner has filed a traverse, Dkt. No. 18. The Court has carefully considered the briefs submitted by the parties, and **DENIES** the petition for the reasons detailed below.

## I. PROCEDURAL HISTORY

In February 2017, Petitioner was charged in Alameda Superior Court with murder (Cal. Penal Code § 187); attempted murder (Cal. Penal Code §§ 187, 664); and possession of a firearm by a felon (Cal. Penal Code § 29800); and alleged that Petitioner personally used a firearm in committing the murder and attempted murder (Cal. Penal Code § 12022.53). *See* Dkt. No. 16-3, Ex. D at 120.[1]

---

[1] For ease of reference, the Court refers to the PDF pagination for this document.

1    A jury found Petitioner guilty of first degree murder and found the gun-use allegation true.
*Id.*  As to the attempted murder charge, the jury found Petitioner guilty of the lesser included offense of attempted voluntary manslaughter (Cal. Penal Code § 192), and found the arming enhancement true.  *Id.*  The jury also found petitioner guilty of possession of a firearm by a felon. *Id.*  The trial court sentenced Petitioner to an aggregate term of seven years two months followed by life in prison without the possibility of parole.  *Id.*

On March 28, 2019, the California Court of Appeal affirmed the judgment on appeal and remanded for resentencing so the trial court could exercise its discretion to strike the firearm enhancement if it so chose.  *Id.* at 1.[2]  On June 19, 2019, the California Supreme Court summarily denied a petition for review.  *See* Dkt. No. 16-3, Ex. E at 166.

Petitioner filed a petition for writ of habeas corpus in this Court in April 2020.  *See* Dkt. No. 1.  In July 2020, the Court granted Petitioner's request to stay the habeas proceedings to allow him an opportunity to exhaust claims 4 and 5 in the state courts.[3]  *See* Dkt. No. 9.  The Court dismissed claim 6 with prejudice.  *Id.* at 3.

In October 2021, Petitioner filed a petition for writ of habeas corpus in Alameda County Superior Court.  *See* Dkt. No. 16-4, Ex. H at 1234–45.  The Alameda Superior Court denied the petition.  *See* Dkt. No. 16-4, Ex. I at 1246–58.  In February 2022, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  *See* Dkt. No. 16-4, Ex. J at 1260–80. The Court of Appeal denied the petition.  *Id.* at 1281.  In June 2022, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  *See* Dkt. No. 16-4, Ex. K at 1283–1303. The California Supreme Court denied the petition.  *Id.* at 1304.  Petitioner then moved to lift the stay in this case and proceed only with claims 1 through 3 of his habeas petition.  *See* Dkt. No. 11. The Court lifted the stay, Dkt. No. 12, and the parties briefed the remaining claims.

//

---

[2] It appears that resentencing was set for August 2023.  *See* Dkt. No. 16- 4, Ex. L at 1307.  But the record before this Court on habeas does not reflect whether that proceeding occurred or what its result was.

[3] This habeas petition was initially before Judge Lucy H. Koh, but was reassigned in 2022.  *See* Dkt. No. 10.

## II. BACKGROUND

The following factual background is taken from the March 28, 2019, opinion of the California Court of Appeal:[4]

> The following facts were memorialized by various surveillance cameras at the Valero gas station where the incidents occurred. The videos were shown to the jury and admitted into evidence at trial. These facts were further substantiated by witness testimony.
>
> On January 1, 2015, at approximately 1:30 p.m. Andre Poole and three associates pulled into a Valero gas station in Oakland to get gas. Derrick Williams was at the gas station with his girlfriend and one of his friends selling Xanax. While passing each other's respective clans, Poole became aware that Williams was selling Xanax. Poole expressed interest in purchasing, and Williams agreed to sell Poole 20 Xanax pills. Poole returned to his vehicle to await delivery of the drugs while Williams went back to his own vehicle to count out the 20 pills.
>
> After counting out the pills, Williams walked across the gas station breezeway to Poole's minivan to deliver the drugs. Williams had the pills in his left hand and nothing in his right hand as he walked over to Poole. As Williams approached, Poole turned his back to Williams and reached inside his sweatshirt as though he was taking out money to purchase the pills. When Poole turned back around to face Williams, Poole had a gun in his right hand and took the pills from Williams with his left hand. Poole put the pills into his sweatshirt pocket, then reached around the back of William's neck with his left hand while still holding the gun in his right hand. Next, Poole brought his left hand down to William's chest and yanked some chains from around Williams's neck.
>
> Poole then lifted his gun up to Williams' neck and fired multiple times at close range. Williams fell to the ground as Poole continued to fire shots at him. At some point during the encounter Williams retrieved a gun from somewhere on his person and was holding it in his right hand when he was shot. Williams never raised his gun or pointed it at Poole. When Williams fell to the ground his gun fell to the ground near his feet. Williams succumbed to his injuries at the scene.
>
> Once Poole began firing at Williams, Poole's associate, Marcus Mayfield, and Williams's associate, Stanford Boatner, began firing at each other across the gas station. As the gunfire continued, Poole and his friends retreated into a nearby neighborhood. Poole was arrested in Sacramento a week after the incident.

---

[4] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, unless otherwise indicated in this order. *See Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), *overruled on other grounds by Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).

*See* Dkt. No. 16-3, Ex. D at 119–120.

## III. LEGAL STANDARD

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state

court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

When a federal claim has been presented to a state court and the state court has summarily denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (one-sentence order denying habeas petition analyzed under § 2254(d)). Accordingly, in reviewing habeas claims not addressed by the state appellate court, this Court follows the Supreme Court's direction and "determine[s] what arguments or theories . . . could have supported" the California Supreme Court's rejection of the federal claim, and then gives deference to those arguments or theories under AEDPA. *Id.* at 102.

## IV.   DISCUSSION

### A.   Instructional Error

Petitioner contends that the jury was erroneously instructed regarding his failure to explain or deny adverse evidence. Traverse at 1–3. Specifically, Petitioner argues that the trial court erred in giving instruction CALCRIM No. 361. *Id.* The instruction states:

> If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure.

CALCRIM No. 361.

In considering the use of the instruction, the California Court of Appeal denied the claim as follows:

> Poole claims it was improper for the trial judge to read CALCRIM No. 361 (failure to explain or deny adverse testimony) to the jury, and the effect of that erroneous jury instruction was so prejudicial to the defendant's claim of self-defense that we should reverse the decision below. Applying de novo review as required, we conclude that the trial court did not err by reading CALCRIM No. 361. (*People v. Waidla* (2000) 22 Cal.4th 690, 733 (*Waidla*); Cal. Const., Art. VI, § 13.) [FN2]

> [FN2] "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., Art. VI, § 13, italics added.)
>
> CALCRIM No. 361 is appropriate "when a defendant completely fails to explain or deny incriminating evidence, or *claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge.*" (*People v. Cortez* (2016) 63 Cal.4th 101,117, italics added (*Cortez*).)  The *Cortez* court found the CALCRIM No. 361 had been properly given "notwithstanding defendant's professed lack of knowledge about certain matters" because "there was ample evidence" in the record, including testimony by other witnesses, "that defendant 'could reasonably be expected to know' these facts or circumstances." (*Id.* at pp. 121–122.)
>
> Here, when Poole was questioned as to whether he had his gun out at the time Williams approached him by the van to deliver the Xanax pills, Poole responded that he "can't give a yes-or-no question [*sic*] to that because I don't—like, it happened so fast to where I really don't remember."  As in *Cortez*, the record here, including video evidence and other witness testimony, leads us to conclude that Poole's assertion of memory lapse was a claimed lack of knowledge which it appears from the evidence that he could reasonably have been expected to have[.]  We therefore hold that the trial court did not err by instructing the jury according to CALCRIM No. 361.

*See* Dkt. No. 16-3, Ex. D at 121–122.

### i. Legal Standard

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  *See Estelle*, 502 U.S. at 71–72.  A habeas petitioner is not entitled to relief unless an instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  A claim of state instructional error can be the basis of federal habeas relief only if the error, considered in light of all the instructions given in addition to the trial record, "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S at 72 (quotation omitted).

The challenged instruction must be evaluated in light of the instructions as a whole and the evidence introduced at trial.  *Id.*; *Johnson v. Texas*, 509 U.S. 350, 368 (1993) ("In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but

6

instead approach the instructions in the same way that the jury would—with a commonsense understanding of the instructions in the light of all that has taken place at the trial.") (quotation omitted); *Cupp v. Naughton*, 414 U.S. 141, 146–47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.").

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting relief in habeas proceedings. *See Brecht*, 507 U.S. at 637. In addition, "[w]hen a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test this Court outlined in *Brecht* and the one Congress prescribed in AEDPA." *Brown v. Davenport*, 596 U.S. 118, 122 (2022).

### ii. Analysis

The California Court of Appeal rejected Petitioner's instructional error claim in a reasoned opinion, so this Court looks through the California Supreme Court's silent denial of this claim and reviews that last reasoned opinion.

Petitioner contends that the California Court of Appeal unreasonably "dispensed with" his argument about CALCRIM No. 361. Specifically, Petitioner points out that the sequence of events took place over just a few seconds. *See* Traverse at 3. Petitioner argues that in the surveillance video, Williams' own gun is shown in his right hand in the shadow on the ground and "in the next second" Petitioner raised his own gun and shoots. *See id.* at 2 (citing Dkt. No. 16-3, Ex. B at 52). Accordingly, Petitioner argues that his "testimony that he could not remember possessing the gun at the moment Williams approached is not 'improbable, incredible, unbelievable, or bizarre.'" *Id.* at 2 (quoting *Cortez*, 63 Cal. 4th at 117). Petitioner further urges that the instruction "singled out [his] testimony for extra scrutiny and differentiated the manner in which that testimony should be evaluated." *Id.* at 3. Ultimately, he states, this was detrimental to his argument that he was acting in self-defense. *See id.* at 2–3.

Despite Petitioner's urging, however, the California Court of Appeal reasonably concluded

that the evidence supported the conclusion that Petitioner's lack of memory was selective and that CALCRIM No. 361 was properly given. As relevant here, and as the Court of Appeal explained, Petitioner was asked about his own conduct before Williams approached to deliver the pills and before the shooting itself. He was asked "whether he had his gun out at the time Williams approached him by the van to deliver the Xanax pills." *See* Dkt. No. 16-3, Ex. D at 121. And in response to this, he said simply that he did not remember. *Id.* As the California Supreme Court has explained, CALCRIM 361 is applicable when a defendant "claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge." *Cortez*, 63 Cal. 4th at 117. Petitioner could reasonably be expected to know whether he had his own gun out when Williams approached to deliver the pills. The surveillance footage also showed that as Williams approached Petitioner's van to deliver the pills, Petitioner turned his back and when he turned back around to face Williams he had a gun in his right hand and took the pills with his left hand. *See* Dkt. No. 16-3, Ex. D at 119.

But even assuming there had been some federal constitutional error here, any such error did not have a substantial and injurious effect or influence on the jury's verdict under *Brecht*. The instruction ultimately leaves the "meaning and importance" of the failure to explain or deny in the jurors' hands. As described above, the video evidence and other witness testimony overwhelmingly established Petitioner's guilt, such that the claimed instructional error would not have prejudiced him even if the Court were to accept Petitioner's theory of error. Habeas relief is thus denied as to this claim.

### B. Prosecutorial Misconduct

Petitioner next contends that the prosecutor committed error by "attacking defense counsel's integrity, by arguing [Petitioner's] criminal disposition, and by injecting his own opinion of the evidence into the argument." *See* Pet. at 11; Traverse at 3–7. The California Court of Appeal denied the claim as follows:

> A prosecutor's behavior violates the federal Constitution when it comprises a pattern of conduct " ' " 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' " (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

"Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*Ibid.*) Additionally, when the claim focuses upon comments that the prosecutor made before the jury, "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Berryman* (1993) 6 Cal.4th 1048, 1072 (*Berryman*), overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 (*Hill*).)

Poole claims that the prosecutor acted improperly during closing argument on four fronts. First, he argues the prosecutor improperly invited the jury to employ propensity reasoning in their decision-making process by repeatedly referring to Poole as being in the " 'business' of robbery." No objection was raised by defense at trial to the prosecution's references to Poole's "business" of robbery. Poole admitted on the record to having been involved in, charged with, and convicted of a second degree robbery in 2008, seven years before the instant offense, and appellate counsel claims this does not amount to being in the "business" of robbery. The defense attorney chose to strategically address the "business of robbery" comments head on in his closing argument by saying that " 'business as usual' implies that Mr. Poole is running around town shooting people. That he's a callous killer. That he does it again and again when there is not one iota of proof. That was because it's not true." This was a tactically sound response to the prosecutor's theme.

Second, Poole argues the prosecutor attacked the defense counsel's integrity by pointing out that "defense counsel didn't 'try to explain' the actions at the gas station but instead used 'the same canned phrase' as [Poole] 'said on the stand.' " Poole claims it was misconduct for the prosecutor say this was a " ' 'rare' case in which defense counsel was 'making [his] points for [him],' " and then going on to tell the jurors " ' [t]he defense wants to make you believe that [Poole] had a gun out in his right hand' and did 'nothing.' " Additionally, Poole focuses on the prosecutor's remark that "defense counsel was a 'seasoned attorney' who 'knows the words that he uses very well.' " Poole claims the statements about the defense attorney's level of expertise and knowledge of the art of persuasion equate to improper accusations by the prosecutor that "defense counsel was intentionally being deceitful and underhanded." We are unpersuaded that these prosecutorial remarks to the jury amounted to anything more than fair comment on the evidence. A prosecutor "is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom." (*People v. Sassounian* (1986) 182 Cal.App.3d 361, 396.) And fair comment includes comment on any failure by the defense to put on evidence explaining incriminating discrepancies in the evidence. (*People v. Brady* (2010) 50 Cal.4th 547, 565–566.) Here, pivoting from defense counsel's suggestion that Poole could not have intended robbery because he knew the victim had a gun in his hand, the prosecutor simply turned this logic around. Accepting what the video evidence plainly showed—that Poole was robbing the victim by grabbing his chains—he argued that, based on defense counsel's own reasoning, the victim must not have been holding a gun at the time.

Granted, as Poole points out, personal attacks on the integrity of defense counsel are improper. (*Hill*, *supra*, 17 Cal.4th at p. 832; see e.g. *Sassounian v. Roe* (9th Cir. 2000) 230

9

F.3d 1097, 1106 [improper to imply defense counsel had fabricated evidence]; *People v. Herring* (1993) 20 Cal.App.4th 1066, 1075 [improper and prejudicial for the prosecutor to state that the defense attorney did not want the jury to hear the truth and had to help his clients plan a defense]); *People v. Jones* (1997) 15 Cal.4th 119, 168 [improper for the prosecutor to state that defense counsel was lying and that his lack of candor damaged his credibility], overruled on another ground in *Hill*, *supra*, 17 Cal.4th at p. 823, fn. 1.) But we see no such attack on the record presented here. At most, as the court pointed out in *People v. Gionis* (1995) 9 Cal.4th 1196, rejecting a claim of prosecutorial misconduct for statements far more prejudicial and egregious than those offered to the jury in this case, "[t]aken in context, the prosecutor's remarks simply pointed out that" the defense attorney in this case was "schooled in the art of persuasion; they did not improperly imply that defense counsel was lying." (*Id.* at pp. 1216–1217.)

Next, Poole argues that the prosecutor improperly injected his own personal opinion into the closing argument by stating to the jury that the word " 'reasonable,' " with regard to reasonable doubt, was " 'based on common sense.' " Defense counsel raised an objection to this statement at trial on the grounds that it called for an "improper legal conclusion." Poole offers no reason that this objection was not properly overruled by the trial judge. Poole further argues that the prosecutor injected his own personal opinion by stating to the jury that they had "more common sense than [him], [had] more life experience than [him]," and, having heard all the evidence in the case, he was "confident" that he jury would "come to the only reasonable conclusion in this case and find the defendant guilty. . . ." No objection was raised at trial to these statements. Furthermore, no objection was ever raised to any statements complained of here on the grounds that the prosecutor was injecting personal opinion into his argument. This court generally will not address a claim of prosecutorial misconduct on appeal unless the defense made "a timely objection at trial and request[ed] an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct." (*People v. Price* (1991) 1 Cal.4th 324, 447.) "A defendant's failure to object to curable misconduct . . . waives the issue for appeal." (*People v. Wharton* (1991) 53 Cal.3d 522, 591.) Any harm caused by the prosecutor's statements in this case would have been cured upon objection by a simple admonition at the judge's discretion.

Finally, Poole contends defense counsel's performance was constitutionally deficient because of his failure to raise objections to the statements by the prosecutor [discussed above]. Poole claims that, due to that ineffective assistance of counsel, the prosecutorial misconduct issues raised by these statements are properly before this court on appeal despite—indeed because of—his counsel's failure to preserve them. We cannot agree.

*See* Dkt. No. 16-3, Ex. D at 122–125.

\*  \*  \*

As detailed above, the California Court of Appeal held that defense counsel objected to and thus preserved for review some—but not all—of the prosecutor's comments that Petitioner now challenges. *See id.* at 122–25. As relevant to Petitioner's arguments in his habeas petition, the Court of Appeal found that defense counsel did not object to references that Petitioner was in

10

the "business of robbery." *See id.* at 122–23. The court noted that defense counsel instead chose a "tactically sound response" by addressing these comments directly in closing argument, stating that there was no evidence that Petitioner is "a callous killer" who "run[s] around shooting people." *Id.* The Court of Appeal similarly found that defense counsel did not object that the prosecutor "injected his own personal opinion" during closing, and any harm would have been cured by a simple admonition had the objection been raised. *Id.* at 124. The Court of Appeal did, however, substantively address the prosecutor's comments about defense counsel's purported integrity.

### i. Procedural Default

#### a. Legal Standard

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can either (1) demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was, as is the case here, a complete failure to object at trial to alleged prosecutorial misconduct. *See Zapata v. Vasquez*, 788 F.3d 1106, 1111–12 (9th Cir. 2015); *see also Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) (review of evidentiary claim barred where state court held that claim was procedurally barred because petitioner failed to object at trial); *Paulino v. Castro*, 371

F.3d 1083, 1092–93 (9th Cir. 2004) (review of instructional error claim barred where state court found that claim was procedurally barred because defense counsel failed to contemporaneously object); *Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir. 1999) (habeas review of peremptory challenge claim barred where state court found that claim was procedurally barred because defense counsel failed to contemporaneously object). In *Zapata*, the petitioner alleged that the prosecutor's "fictional, inflammatory statements in the closing argument" constituted misconduct. The state court held that claim was procedurally barred because counsel did not object to these remarks at trial, but also addressed the claim on the merits. *Zapata*, 788 F.3d at 1111–12. Despite the state court addressing the claim on the merits, the Ninth Circuit held that it could not reach the merits of the prosecutorial misconduct claim because the state court's application of the procedural bar rendered the claim defaulted. *Id.*

### b. Analysis

The Court is barred from considering any claim about the prosecutor injecting his personal opinion into the trial or that Petitioner was in the "business of robbery." The contemporaneous objection rule is an adequate and independent state ground that bars federal habeas review of his other claims. And Petitioner has not alleged, much less demonstrated, either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The cause standard requires the Petitioner to show that "'some objective factor external to the defense impeded counsel's efforts'" to raise the claim. *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). But nothing in the record indicates that Petitioner or his counsel was prevented from objecting at trial, and as discussed further below, defense counsel did object to some of the prosecutor's other comments during closing. Because the state court denied this claim pursuant to adequate and independent state grounds that were correctly applied, federal habeas review of this claim is barred. *See Coleman*, 501 U.S. at 729–30.

Moreover, to the extent Petitioner attempts to excuse the procedural default, this argument also fails. Although Petitioner argues that the prosecutor's comments were "repeated and pervasive," *see* Traverse at 5, his conclusory assertion that such comments resulted in a

miscarriage of justice is simply not supported by the record, which includes surveillance footage of the events. *See Gandarela v. Johnson*, 286 F.3d 1080, 1085–86 (9th Cir. 2002) (requiring colorable claim of "actual innocence" to show fundamental miscarriage of justice would result from application of procedural default).

### ii. Remaining Prosecutorial Misconduct Claim

#### a. Legal Standard

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005); *see also Deck v. Jenkins*, 814 F.3d 954, 978 (9th Cir. 2016) (recognizing that *Darden* is the clearly established federal law regarding a prosecutor's improper comments or remarks for AEDPA review purposes). A prosecutorial misconduct claim is decided "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (quotation omitted); *see Trillo v. Biter*, 769 F.3d 995, 1001 (9th Cir. 2014) ("Our aim is not to punish society for the misdeeds of the prosecutor; rather, our goal is to ensure that the petitioner received a fair trial.").

When determining whether the misconduct rises to the level of a due process violation, the Court may consider factors such as: (1) the weight of evidence of guilt, *compare United States v. Young*, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt), *with United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required based on prosecutor's reference to defendant's courtroom demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern, *see Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct related to a critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to disclose information

1   showing potential bias of witness especially significant because government's case rested on
2   credibility of that witness); and (4) whether a prosecutor's comment misstated or manipulated the
3   evidence, *see Darden*, 477 U.S. at 182.

### b. Analysis

Petitioner contends that the prosecutor improperly attacked defense counsel during closing in an attempt "to convince the jury to convict based on . . . a seasoned defense counsel's attempt to fool them." *See* Traverse at 5. As the Ninth Circuit has explained, and as the California Court of Appeal acknowledged, a prosecutor may not gratuitously attack defense counsel's integrity and veracity. *See Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983) (finding prosecutor's closing comments improper when he equated defendant's hiring of counsel with guilt and suggested that defense counsel was retained to "lie and distort the facts and camouflage the truth"); *cf. United States v. Foster*, 711 F.2d 871, 883 (9th Cir. 1983) (noting importance of prosecutor's corrective statement after implying defense counsel was part of conspiracy to distribute heroin). However, the Court of Appeal found no prejudicial error in the prosecutor's closing arguments. This was not unreasonable, particularly when the prosecutor's comments are placed in context.

During closing, defense counsel argued that Petitioner did not intend to rob Mr. Williams, and that instead Petitioner shot him because in the "eight seconds" of time during their exchange Petitioner believed Mr. Williams had a gun in his hands and was moving to shoot Petitioner. *See, e.g.*, Dkt. No. 16-4, Ex. G at 1159:3–1161:24. Defense counsel further argued that Petitioner did not intend to rob Mr. Williams, and there was no robbery, because "[y]ou ain't gonna rob someone with a gun." *See id.* at 1160:6–8. Petitioner cites to discrete statements that the prosecutor made during rebuttal, suggesting that the prosecutor attacked defense counsel's integrity. *See* Traverse at 5. But it is plain—as the Court of Appeal explained—that the comments Petitioner cites were fair comments on the evidence rather than on defense counsel himself. For example, the prosecutor stated that defense counsel was using "the same canned phrase" of "eight seconds" that Petitioner used on the stand, rather than explaining Petitioner's conduct shown in the surveillance footage: taking the pills from Mr. Williams, pocketing the pills, then grabbing the chains around Mr. Willaims' neck. *See* Traverse at 5 (citing Dkt. No. 16-4, Ex. G at 1163–64). Based on the

surveillance footage, which showed Petitioner robbing Mr. Williams, the prosecutor also turned defense counsel's reasoning on its head: Petitioner would not have robbed Mr. Williams if he already had a gun out at the time. *See* Dkt. No. 16-4, Ex. G at 1163:15–25. Therefore, Mr. Williams must not have had a gun out. *Id.* The prosecutor stated, for example, "[y]ou're not going to snatch [Mr. Williams'] chain off if he had a gun out." *Id.* at 1163:18–19. The prosecutor also pointed out that defense counsel repeatedly referred to Mr. Williams as an "armed drug dealer," and implored the jury not to be persuaded by such language into discounting Mr. Williams' life or Petitioner's conduct. *Id.* at 1162:26–1163:12. These were not attacks on defense counsel's integrity. Additionally, in light of the overwhelming evidence of Petitioner's guilt, Petitioner has not shown that the prosecutor's stray comments, even if improper, rose to the level of a due process violation. Habeas relief is thus denied as to this claim.

### C. Ineffective Assistance of Counsel

Relatedly, Petitioner contends that his trial attorney rendered ineffective assistance of counsel by failing to object to some of the prosecutor's comments during closing. *See* Traverse at 7–8. The California Court of Appeal denied this claim as follows:

> To establish ineffective assistance of counsel under the Sixth Amendment or under article I, section 15 of the California constitution, Poole "must demonstrate both deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of reasonable probability of an adverse effect on the outcome." (*Waidla*, *supra*, 22 Cal.4th at p. 718; *see also Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*) [To prove ineffective assistance of counsel "defendant must show that counsel's representation fell below an objective standard of reasonableness" under the "prevailing professional norms." The defendant must also show that counsel's "deficient performance prejudiced the defense" through "errors . . . so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."].)
>
> Poole's ineffective assistance arguments fail for lack of any showing of prejudice. The statements in question were "hardly determinative of the balance between inculpation and exculpation or aggravation and mitigation." (*Waidla*, *supra*, 22 Cal.4th at p. 719.) "As the high court has observed, '[i]solated passages of a prosecutor's argument,' 'like all closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.' " (*Cortez*, *supra*, 63 Cal.4th at p. 133, quoting *Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 646–647.) Ultimately, we are concerned with whether a defendant received a fair trial. The question we must decide in determining whether Poole suffered a denial of due process in this case is, but for the prosecutorial conduct complained of, "is it

15

> reasonably probable that a result more favorable to the defendant would have occurred." (*People v. Strickland* (1974) 11 Cal.3d 946, 955.) We do not agree that the prosecutor's conduct here was egregious or that it infected the trial with unfairness that amounts to a denial of due process. The evidence against the defendant was so compelling—particularly the video footage—that even if the prosecutor had not made any of the statements complained of, it is not reasonably probable a result more favorable to the defendant would have occurred. (*See Berryman*, *supra*, 6 Cal.4th 1048, 1072 ["We simply cannot conclude that the prosecutor used a method to persuade the jury that was 'deceptive' or 'reprehensible.' "].)
>
> Poole's ineffective assistance claim also fails to meet the performance prong of *Strickland*. To succeed on a claim that defense counsel's performance fell below a constitutional level of professional reasonableness, the burden is on the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (*Strickland*, *supra*, 466 U.S. at p. 687.) The record here does not come close to meeting that demanding standard. The specific question is whether counsel's failures to object to what he now wishes to assert as prosecutorial misconduct for the first time on appeal fell below an objective standard of reasonableness. With failures to object during argument—where there can be any number of tactical reasons counsel may have for withholding particular objections in the courtroom—the burden of showing constitutionally deficient performance is not easily met. Poole has made no such showing on this record. Absent convincing evidence to the contrary, this court "strongly presume[s]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Id.* at p. 690.)

*See* Dkt. No. 16-3, Ex. D at 125–126.

### i. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan*, 446 U.S. 335, 344–45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. *First*, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88, *see also Andrus v. Texas*, 140 S. Ct. 1875, 1881 (U.S. June 15,

2020) (per curiam).  *Second*, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Andrus*, 140 S Ct. at 1881.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  Where a petitioner has failed to meet the *Brecht* harmless error standard with respect to a particular claim, the Ninth Circuit has held that the petitioner necessarily "cannot meet the higher *Strickland* standard of prejudice."  *Kipp v. Davis*, 971 F.3d 866, 878 (9th Cir. 2020) (citing *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995)).

        The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Williams (Terry) v. Taylor*, 529 U.S. 362, 404–08 (2000).  A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  *See Pinholster*, 563 U.S. at 200–202; *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (same); *Premo v. Moore*, 562 U.S. 115, 122 (2011) (same).  The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington*, 562 U.S. at 105; *see also Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (critical question was not whether court of appeals itself could see substantial likelihood of different result had defendant's attorney taken different approach; critical question was whether the state court erred so badly that every fairminded jurist would disagree as to defendant's guilt).  "[I]f a fairminded jurist could agree with either [the] deficiency or prejudice holding, the reasonableness of the other is 'beside the point.'"  *Shinn*, 141 S. Ct. at 524 (quoting *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam)).

### ii. Analysis

The Court finds that the Court of Appeal was not objectively unreasonable in rejecting the ineffective assistance claim. In reviewing a claim that counsel was ineffective for failing to object at trial, the merits of the underlying claim "control the resolution of the *Strickland* claim because trial counsel cannot have been ineffective for failing to raise a meritless objection." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). As the Court has already found, the state courts did not act unreasonably in rejecting Petitioner's underlying substantive arguments regarding the instructional and prosecutorial misconduct claims. It follows that raising objections on these grounds would have been meritless, such that it was not objectively unreasonable for the Court of Appeal to conclude that counsel's decision not to object was not prejudicially deficient performance. Moreover, the Court of Appeal's conclusion that there was no prejudice plainly was not objectively unreasonable. Habeas relief is thus denied as to this claim.

### D. Cumulative Error

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Cumulative error is more likely to be found prejudicial when the government's case is weak. *See Thomas v. Hubbard*, 273 F.3d 1164, 1180 (9th Cir. 2001), *as amended* (Jan. 22, 2002), *and overruled on other grounds by Payton v. Woodford*, 299 F.3d 815 (9th Cir. 2002) (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime). However, where only one (or no) constitutional errors exist, nothing can accumulate to the level of a constitutional violation. *U.S. v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("[O]ne error is not cumulative error.").

Here, Petitioner acknowledges that although he raised the cumulative error argument before the California Court of Appeal, he did not raise it before the California Supreme Court. *See* Traverse at 8. He urges, however, that the Court should nonetheless consider the argument as

"sufficiently related" to an exhausted claim. *Id.* (citing *Lounsbury v. Thompson*, 374 F.3d 785, 787 (9th Cir. 2004)). But even if the Court were to consider the merits of this claim, the Court has found no errors, so there is nothing to accumulate to the level of a constitutional violation. Habeas relief is therefore denied on this ground as well.

## V. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## VI. CONCLUSION

The petition for a writ of habeas corpus is **DENIED**, Dkt. No. 1, and a certificate of appealability is **DENIED**. The Clerk shall enter judgment in favor of Respondent and close the case.

**IT IS SO ORDERED.**

Dated: 11/7/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge